1  NICOLA T. HANNA
   United States Attorney
2  THOMAS D. COKER
   Chief, Tax Division
3  ROBERT F. CONTE (SBN 157582)
   Assistant United States Attorney
4       300 North Los Angeles Street
        Federal Building, Room 7211
5       Los Angeles, California 90012
        Telephone: (213) 894 6607
6       Facsimile: (213) 894 0115
        E mail: robert.conte@usdoj.gov
7  CHRISTOPHER S. STRAUSS (DC Bar No. 1030802)
   Trial Attorney
8  ELLEN M. QUATTRUCCI (DC Bar No. 462103)
   Trial Attorney
9  Tax Division, Western Criminal Enforcement Section
   United States Department of Justice
10      601 D. St. NW, Room 7022
        Washington, D.C. 20004
11      Telephone: (202) 514-5762
        Facsimile: (202) 514-9623
12      E-mail:  Christopher.S.Strauss@usdoj.gov
                 Ellen.M.Quattrucci@usdoj.gov
13
   Attorneys for Plaintiff
14 UNITED STATES OF AMERICA

15                   UNITED STATES DISTRICT COURT

16            FOR THE CENTRAL DISTRICT OF CALIFORNIA

17 UNITED STATES OF AMERICA,          No. CR 17-CR-452-MWF

18          Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                      TEYMOUR KHOUBIAN
19            v.

20 TEYMOUR KHOUBIAN,

21          Defendant.

22

23      1.    This constitutes the plea agreement between TEYMOUR

24 KHOUBIAN ("defendant") and the United States Attorney's Office for

25 the Central District of California and the U.S. Department of

26 Justice, Tax Division (collectively the "USAO") in the above-

27 captioned case.  This agreement is limited to the USAO and cannot

28 bind any other federal, state, local, or foreign prosecuting,

1 | enforcement, administrative, or regulatory authorities and is subject
2 | to the approval of the Department of Justice, Tax Division.

### DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts Two and Three of the indictment in <u>United States v. Khoubian</u>, CR No. 17-CR-452-MWF, which each charge defendant with willfully making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   Pay the restitution ordered by the Court and agreed to by defendant in Paragraph 10.

2

1                        DEFENDANT'S OTHER OBLIGATIONS

2        3.   Defendant also agrees:

3             a.   To cooperate with the IRS in the civil examination,

4   determination, assessment and collection of income taxes related to

5   (i) defendant's 2005 through 2012 individual income tax returns,

6   including reporting and paying all taxes, penalties and interest, on

7   all of the income of whatever kind earned on the total amount of

8   assets in all foreign accounts held individually or jointly by the

9   defendant at Bank Leumi le-Israel, B.M. and Commerzbank AG during

10  2005 and 2012; and (ii) any related corporate/entity tax returns.

11  Defendant further agrees not to conceal, transfer, or dissipate funds

12  or property that could be used to satisfy such taxes, penalties and

13  interest.

14            b.   Defendant agrees to sign any waivers of statutes of

15  limitations as requested by the Internal Revenue Service; and further

16  agrees to waive any objection to the assessment and collection of any

17  tax, penalties, and interest for tax years 2005 through 2012,

18  inclusive regarding any of the tax returns.

19            c.   To repatriate any funds or assets held in any foreign

20  country or outside the United States regarding accounts over which

21  defendant has a financial interest in, or signature or other

22  authority over.

23            d.   To give up any and all objections that could be

24  asserted to the Examination Division of the IRS receiving materials

25  or information obtained during the criminal investigation of this

26  matter, including materials and information obtained through grand

27  jury subpoenas.

28

                                    3

e.   That nothing in this agreement shall preclude or bar the IRS from the assessment and/or collection of any additional tax liability from defendant, including interest and penalties, determined to be due and owing from defendant by the IRS for 2005, 2006, 2007, 2008, 2009, 2010, 2011, and 2012.

f.   Defendant further agrees that he was assessed a Report of Foreign Bank and Financial Accounts penalty ("FBAR penalty") of $7,686,004, under section 5321(a)(5) and/or 5321(a)(6) of Title 31 of the United States Code.  This penalty was assessed because defendant willfully failed to file an FBAR for calendar year 2010.  Defendant waives any and all defenses to the assessment and collection of the FBAR penalty under Title 31 of the United States Code, including any defense based on the expiration of the period of limitations on the assessment or collection of penalties and interest.

g.   Defendant agrees to the entry of a civil judgment in favor of the United States and against Teymour Khoubian for $7,686,004, which was assessed on May 25, 2017, plus all subsequent statutory accruals including interest and penalties.

h.   Defendant agrees to pay the total sum of money regarding his FBAR penalty prior to sentencing to the United States Treasury, pursuant to instructions provided to defendant and defendant's counsel by the Department of Justice Tax Division Trial Attorney.

THE USAO'S OBLIGATIONS

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

4

1    c. At the time of sentencing, move to dismiss the

2 remaining counts of the indictment.  Defendant agrees, however, that

3 at the time of sentencing the Court may consider any dismissed

4 charges in determining the applicable Sentencing Guidelines range,

5 the propriety and extent of any departure from that range, and the

6 sentence to be imposed.

7    d. At the time of sentencing, provided that defendant

8 demonstrates an acceptance of responsibility for the offenses up to

9 and including the time of sentencing, recommend a two-level reduction

10 in the applicable Sentencing Guidelines offense level, pursuant to

11 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

12 additional one-level reduction if available under that section.

13    e. Not to further criminally prosecute defendant for any

14 additional violations known to the USAO at the time of the plea,

15 arising out of the information provided by the defendant, and

16 defendant's conduct described in the indictment or described in the

17 statement of facts provided in Attachment A.

18    f. The USAO further agrees not to prosecute the

19 defendant's wife, D.K., or his mother, T.K.K., for any violations of

20 law known to the USAO at the time of the plea arising out of the

21 indictment, and for any conduct described in the indictment or the

22 statement of facts provided in Attachment A.

23    g. Defendant understands that the USAO is free to

24 prosecute defendant, his wife, D.K., or his mother, T.K.K., for any

25 other unlawful past conduct or any unlawful conduct that occurs after

26 the date of this agreement.  Defendant understands that at the time

27 of sentencing, the Court may consider any relevant conduct related to

28 the crime set forth herein in determining the applicable Sentencing

1   Guidelines range, the propriety and extent of any departure from that

2   range, and the sentence to be imposed after consideration of the

3   Sentencing Guidelines and all other relevant factors under 18 U.S.C.

4   § 3553(a).

5          h.   Recommend that defendant be sentenced to a term of

6   imprisonment no higher than the low end of the applicable Sentencing

7   Guidelines range. For purposes of this agreement, the low end of the

8   Sentencing Guidelines range is that defined by the Sentencing Table

9   in U.S.S.G. Chapter 5, Part A.

10                          NATURE OF THE OFFENSES

11      5.   Defendant understands that for defendant to be guilty of

12  the crime charged in Count Two, that is, Willfully Making and

13  Subscribing A False Tax Return, in violation of Title 26, United

14  States Code, Section 7206(1) the following must be true:

15         a.   The defendant made and signed a U.S. Individual Income

16  Tax Return for the year 2009 that he knew contained false information

17  as to a material matter;

18         b.   The return contained a written declaration that it was

19  made under the penalties of perjury; and

20         c.   The defendant acted willfully in filing the false

21  return.

22         d.   Defendant admits that defendant is, in fact, guilty of

23  this offense as described in Count Two of the indictment.

24      6.   Defendant understands that for defendant to be guilty of

25  the crime charged in Count Three, that is, Willfully Making and

26  Subscribing A False Tax Return, in violation of Title 26, United

27  States Code, Section 7206(1) the following must be true:

28

6

1    a.   The defendant made and signed a U.S. Individual Income

2  Tax Return for the year 2010 that he knew contained false information

3  as to a material matter;

4    b.   The return contained a written declaration that it was

5  made under the penalties of perjury; and

6    c.   The defendant acted willfully in filing the false

7  return.

8    d.   Defendant admits that defendant is, in fact, guilty of

9  this offense as described in Count Three of the indictment.

10                    PENALTIES AND RESTITUTION

11    7.   Defendant understands that the statutory maximum sentence

12  that the Court can impose for each violation of Title 26, United

13  States Code, Section 7206(1)is: three years of imprisonment; a one

14  year period of supervised release; a fine of $250,000 or twice the

15  amount of gross gain or gross loss resulting from the offense,

16  whichever is greater; and a mandatory special assessment of $100.

17  Defendant agrees to pay the special assessment at or before the time

18  of sentencing.

19    8.   Defendant understands, therefore, that the total maximum

20  sentence for all offenses to which defendant is pleading guilty is:

21  six years of imprisonment; a one year period of supervised release; a

22  fine of $500,000 or twice the amount of gross gain or gross loss

23  resulting from the offenses, whichever is greater; and a mandatory

24  special assessment of $200.  Defendant agrees to pay the special

25  assessment at or before the time of sentencing.

26    9.   Defendant understands and agrees that the Court must order

27  defendant to pay the costs of prosecution, which may be in addition

28  to the statutory maximum fine stated above.  The government

7

1  acknowledges that it has not incurred any recoverable expenses in
2  connection with this prosecution as of the date of his agreement.
3      10.   Defendant further agrees to make restitution for the loss
4  of income tax revenue associated with the income earned on
5  defendant's foreign financial accounts at Bank Leumi le-Israel, B.M.
6  during the calendar years 2005 to 2012 that defendant willfully
7  omitted from his tax returns.  Defendant further agrees that
8  defendant will not seek the discharge of any restitution obligation
9  that the court may order, in whole or in part, in any present or
10 further bankruptcy proceeding.  The parties agree that the amount of
11 restitution owed to the IRS is as follows:

| TAX YEAR | AMOUNT TO BE CREDITED TO TAX |
|---|---|
| 2005 | $75,311 |
| 2006 | $106,239 |
| 2007 | $131,498 |
| 2008 | $127,383 |
| 2009 | $92,119 |
| 2010 | $78,294 |
| 2011 | $0 |
| 2012 | $1,466 |
| Total Tax Due | $612,310 |

11.   Defendant agrees that restitution is due and payable
immediately after the judgment is entered and is subject to immediate
enforcement, in full, by the United States.  If the Court imposes a
schedule of payments, defendant agrees that the schedule of payments
is a schedule of the minimum payment due, and that the payment

8

1   schedule does not prohibit or limit the methods by which the United

2   States may immediately enforce the judgment in full.

3        12.   If the Court orders the defendant to pay restitution to

4   the IRS for the failure to pay tax, either directly as part of the

5   sentence or as a condition of supervised release or probation, the

6   IRS will use the restitution order as the basis for a civil

7   assessment.   See 26 U.S.C. §6201(a)(4).   The defendant does not have

8   the right to challenge the amount of this restitution-based

9   assessment.   See 26 U.S.C. §6201(a)(4)(C).   Neither the existence of

10  a restitution payment schedule nor the defendant's timely payment of

11  restitution according to that schedule will preclude the IRS from

12  immediately collecting the full amount of the restitution-based

13  assessment, including by levy and restraint under 26 U.S.C. §6331.

14       13.   Defendant agrees that he will sign any IRS forms

15  deemed necessary by the IRS to enable the IRS to make an immediate

16  assessment of that portion of the tax and interest that he agrees to

17  pay as restitution pursuant to this agreement.   Defendant also agrees

18  to sign IRS Form 8821, "Tax Information Authorization."

19       14.   Defendant agrees not to file any claim for refund of

20  taxes, or penalties represented by an amount of restitution paid

21  pursuant to this agreement.

22       15.   The parties understand that defendant will receive

23  proper credit, consistent with paragraph 10 above, for the payments

24  made pursuant to this agreement, including any prior payments made by

25  defendant.   Except as set forth in the previous sentence, nothing in

26  this agreement shall limit the IRS in its lawful examination,

27  determination, assessment, or collection of any taxes, penalties or

28

9

1    interest due from the defendant for the time periods covered by this

2    agreement or any other time period.

3        16.   Defendant agrees to send all payments made pursuant to the

4    District Court's restitution order to the Clerk of Court.

5        17.   With each payment to the Clerk of Court made payable to the

6    District Court's restitution order, defendant will provide the

7    following information:

8            a.   Defendant's name and Social Security number;

9            b.   The District Court and the docket number assigned to

10       the case;

11           c.   Tax year(s) or period(s) for which restitution has been

12       ordered;

13           d.   A statement that the payment is being submitted

14   pursuant to the District Court's restitution order.

15       18.   Defendant agrees to include a request that the Clerk of

16   Court send the information, along with the defendant's payments, to

17   the address below.

18       19.   Defendant also agrees to send a notice of any payments made

19   pursuant to this agreement, including the information listed in the

20   previous paragraph, to the IRS at the following address:

21           IRS-RACS
             Attn:  Mail Stop 6261, Restitution
22           333  W. Pershing Avenue
             Kansas City, MO 64108
23

24       20.   Defendant understands that supervised release is a period

25   of time following imprisonment during which defendant will be subject

26   to various restrictions and requirements.  Defendant understands that

27   if defendant violates one or more of the conditions of any supervised

28   release imposed, defendant may be returned to prison for all or part

                                    10

1    of the term of supervised release, which could result in defendant

2    serving a total term of imprisonment greater than the statutory

3    maximum stated above.

4        21.   Defendant also understands that, by pleading guilty,

5    defendant may be giving up valuable government benefits and valuable

6    civic rights, such as the right to vote, the right to possess a

7    firearm, the right to hold office, and the right to serve on a jury.

8    Defendant further understands that the conviction in this case may

9    subject defendant to various collateral consequences, including but

10   not limited to, deportation, revocation of probation, parole, or

11   supervised release in another case, and suspension or revocation of a

12   professional license.   Defendant understands that unanticipated

13   collateral consequences will not serve as grounds to withdraw

14   defendant's guilty plea.

15                          FACTUAL BASIS

16       22.   Defendant admits that defendant is, in fact, guilty of the

17   offenses to which defendant is agreeing to plead guilty.   Defendant

18   and the USAO agree to the statement of facts provided in Attachment A

19   and agree that this statement of facts is sufficient to support pleas

20   of guilty to the charges described in this agreement and to establish

21   the Sentencing Guidelines factors set forth in paragraph 24 below,

22   but is not meant to be a complete recitation of all facts relevant to

23   the underlying criminal conduct or all facts known to either party

24   that relate to that conduct.

25                       SENTENCING FACTORS

26       23.   Defendant understands that in determining defendant's

27   sentence the Court is required to calculate the applicable Sentencing

28   Guidelines range and to consider that range, possible departures

11

1  under the Sentencing Guidelines, and the other sentencing factors set

2  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

3  Sentencing Guidelines are advisory only, that defendant cannot have

4  any expectation of receiving a sentence within the calculated

5  Sentencing Guidelines range, and that after considering the

6  Sentencing Guidelines and the other § 3553(a) factors, the Court will

7  be free to exercise its discretion to impose any sentence it finds

8  appropriate up to the maximum set by statute for the crimes of

9  conviction.

10      24.  Defendant and the USAO agree to the following applicable

11  Sentencing Guidelines factors:

12

13      Base Offense Level:        20    U.S.S.G. § 2T1.1; 2T4.1(H)

14      Specific Offense Characteristics

15         Sophisticated Means     2    U.S.S.G. § 2T1.1(b)(2)

16      Acceptance of Responsibility: -3    U.S.S.G. § 3E1.1

17      Total Offense Level:       19

18

19      25.  Defendant and the USAO agree not to seek, argue, or suggest

20  in any way, either orally or in writing, that any other specific

21  offense characteristics, adjustments, or departures relating to the

22  applicable Offense Level be imposed.  The USAO will agree to a

23  downward adjustment for acceptance of responsibility (and, if

24  applicable, move for an additional level under 3E1.1(b)) only if the

25  conditions set forth in this agreement are met.  Defendant agrees,

26  however, that if, after signing this agreement but prior to

27  sentencing, defendant were to commit an act, or the USAO were to

28  discover a previously undiscovered act committed by defendant prior

12

1  to signing this agreement, which act, in the judgment of the USAO,

2  constituted obstruction of justice within the meaning of U.S.S.G. §

3  3C1.1, the USAO would be free to seek the enhancement set forth in

4  that section.  Defendant understands that there is no agreement as to

5  defendant's criminal history or criminal history category.

6      26.  Defendant reserves the right to argue for a sentence

7  outside the sentencing range established by the Sentencing Guidelines

8  based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2),

9  (a)(3), (a)(6), and (a)(7).

10               WAIVER OF CONSTITUTIONAL RIGHTS

11     27.  Defendant understands that by pleading guilty, defendant

12  gives up the following rights:

13          a.   The right to persist in a plea of not guilty.

14          b.   The right to a speedy and public trial by jury.

15          c.   The right to be represented by counsel -- and if

16  necessary have the court appoint counsel -- at trial.  Defendant

17  understands, however, that, defendant retains the right to be

18  represented by counsel -- and if necessary have the court appoint

19  counsel -- at every other stage of the proceeding.

20          d.   The right to be presumed innocent and to have the

21  burden of proof placed on the government to prove defendant guilty

22  beyond a reasonable doubt.

23          e.   The right to confront and cross-examine witnesses

24  against defendant.

25          f.   The right to testify and to present evidence in

26  opposition to the charges, including the right to compel the

27  attendance of witnesses to testify.

28

1      g.   The right not to be compelled to testify, and, if
2  defendant chose not to testify or present evidence, to have that
3  choice not be used against defendant.

4      h.   Any and all rights to pursue any affirmative defenses,
5  Fourth Amendment or Fifth Amendment claims, and other pretrial
6  motions that have been filed or could be filed.

7                    WAIVER OF APPEAL OF CONVICTION

8      28.  Defendant understands that, with the exception of an appeal
9  based on a claim that defendant's guilty pleas were involuntary, by
10 pleading guilty defendant is waiving and giving up any right to
11 appeal defendant's convictions on the offenses to which defendant is
12 pleading guilty.

13              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

14     29.  Defendant agrees that, provided the Court imposes a total
15 term of imprisonment on all counts of conviction that is within or
16 below the range corresponding to a total offense level of 19 and the
17 criminal history calculated by the Court, defendant gives up the
18 right to appeal all of the following: (a) the procedures and
19 calculations used to determine and impose any portion of the
20 sentence; (b) the term of imprisonment imposed by the Court; (c) the
21 fine imposed by the court, provided it is within the statutory
22 maximum; (d) the amount and terms of any restitution order, provided
23 it requires payment of no more than $612,310; (e) the term of
24 probation or supervised release imposed by the Court, provided it is
25 within the statutory maximum; and (f) any of the following conditions
26 of probation or supervised release imposed by the Court: the
27 conditions set forth in General Orders 318, 01-05, and/or 05-02 of
28 this Court; the drug testing conditions mandated by 18 U.S.C.

14

1  §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions

2  authorized by 18 U.S.C. § 3563(b)(7).

3      30.  The USAO agrees that, provided (a) all portions of the

4  sentence are at or below the statutory maximum specified above and

5  (b) the Court calculates the offense level to be used for selecting a

6  sentencing range under the Sentencing Guidelines to be 19 or above;

7  (c) the Court imposes a term of imprisonment within or above the

8  range corresponding to a total offense level of 19 and the criminal

9  history calculated by the Court, the USAO gives up its right to

10  appeal any portion of the sentence, with the exception that the USAO

11  reserves the right to appeal the amount of restitution ordered if

12  that amount is less than $612,310.

13                  RESULT OF WITHDRAWAL OF GUILTY PLEA

14      31.  Defendant agrees that if, after entering guilty pleas

15  pursuant to this agreement, defendant seeks to withdraw and succeeds

16  in withdrawing defendant's guilty plea on any basis other than a

17  claim and finding that entry into this plea agreement was

18  involuntary, then (a) the USAO will be relieved of all of its

19  obligations under this agreement; and (b) should the USAO choose to

20  pursue any charge or any civil, administrative, or regulatory action

21  that was either dismissed or not filed as a result of this agreement,

22  then (i) any applicable statute of limitations will be tolled between

23  the date of defendant's signing of this agreement and the filing

24  commencing any such action; and (ii) defendant waives and gives up

25  all defenses based on the statute of limitations, any claim of pre-

26  indictment delay, or any speedy trial claim with respect to any such

27  action, except to the extent that such defenses existed as of the

28  date of defendant's signing this agreement.

15

1
EFFECTIVE DATE OF AGREEMENT

2    32.   This agreement is effective upon signature and execution of

3 all required certifications by defendant, defendant's counsel, and an

4 Assistant United States Attorney or Department of Justice Trial

5 Attorney.

6
BREACH OF AGREEMENT

7    33.   Defendant agrees that if defendant, at any time after the

8 signature of this agreement and execution of all required

9 certifications by defendant, defendant's counsel, and an Assistant

10 United States Attorney or Department of Justice Trial Attorney,

11 knowingly violates or fails to perform any of defendant's obligations

12 under this agreement ("a breach"), the USAO may declare this

13 agreement breached.  All of defendant's obligations are material, a

14 single breach of this agreement is sufficient for the USAO to declare

15 a breach, and defendant shall not be deemed to have cured a breach

16 without the express agreement of the USAO in writing.  If the USAO

17 declares this agreement breached, and the Court finds such a breach

18 to have occurred, then: (a) if defendant has previously entered

19 guilty pleas pursuant to this agreement, defendant will not be able

20 to withdraw the guilty pleas, and (b) the USAO will be relieved of

21 all its obligations under this agreement.

22    34.   Following the Court's finding of a knowing breach of this

23 agreement by defendant, should the USAO choose to pursue any charge

24 or any civil, administrative, or regulatory action that was either

25 dismissed or not filed as a result of this agreement, then:

26        a.   Defendant agrees that any applicable statute of

27 limitations is tolled between the date of defendant's signing of this

28 agreement and the filing commencing any such action.

16

1          b.    Defendant waives and gives up all defenses based on

2 the statute of limitations, any claim of pre-indictment delay, or any

3 speedy trial claim with respect to any such action, except to the

4 extent that such defenses existed as of the date of defendant's

5 signing this agreement.

6          c.    Defendant agrees that: (i) any statements made by

7 defendant, under oath, at the guilty plea hearing (if such a hearing

8 occurred prior to the breach); (ii) the agreed to factual basis

9 statement in this agreement; and (iii) any evidence derived from such

10 statements, shall be admissible against defendant in any such action

11 against defendant, and defendant waives and gives up any claim under

12 the United States Constitution, any statute, Rule 410 of the Federal

13 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

14 Procedure, or any other federal rule, that the statements or any

15 evidence derived from the statements should be suppressed or are

16 inadmissible.

17 RESULT OF VACATUR, REVERSAL OR SET-ASIDE

18    35.   Defendant agrees that if any count of conviction is

19 vacated, reversed, or set aside, the USAO may: (a) ask the Court to

20 resentence defendant on any remaining count of conviction, with both

21 the USAO and defendant being released from any stipulations regarding

22 sentencing contained in this agreement, (b) ask the Court to void the

23 entire plea agreement and vacate defendant's guilty plea on any

24 remaining count of conviction, with both the USAO and defendant being

25 released from all their obligations under this agreement, or (c)

26 leave defendant's remaining conviction, sentence, and plea agreement

27 intact.  Defendant agrees that the choice among these three options

28 rests in the exclusive discretion of the USAO.

17

1                    COURT AND PROBATION OFFICE NOT PARTIES

2       36.   Defendant understands that the Court and the United States

3  Probation Office are not parties to this agreement and need not

4  accept any of the USAO's sentencing recommendations or the parties'

5  agreements to facts or sentencing factors.

6       37.   Defendant understands that both defendant and the USAO are

7  free to: (a) supplement the facts by supplying relevant information

8  to the United States Probation Office and the Court, (b) correct any

9  and all factual misstatements relating to the Court's Sentencing

10  Guidelines calculations and determination of sentence, and (c) argue

11  on appeal and collateral review that the Court's Sentencing

12  Guidelines calculations and the sentence it chooses to impose are not

13  error, although each party agrees to maintain its view that the

14  calculations in paragraph 23 are consistent with the facts of this

15  case.   While this paragraph permits both the USAO and defendant to

16  submit full and complete factual information to the United States

17  Probation Office and the Court, even if that factual information may

18  be viewed as inconsistent with the facts agreed to in this agreement,

19  this paragraph does not affect defendant's and the USAO's obligations

20  not to contest the facts agreed to in this agreement.

21       38.   Defendant understands that even if the Court ignores any

22  sentencing recommendation, finds facts or reaches conclusions

23  different from those agreed to, and/or imposes any sentence up to the

24  maximum established by statute, defendant cannot, for that reason,

25  withdraw defendant's guilty pleas, and defendant will remain bound to

26  fulfill all defendant's obligations under this agreement.   Defendant

27  understands that no one -- not the prosecutor, defendant's attorney,

28  or the Court -- can make a binding prediction or promise regarding

1  the sentence defendant will receive, except that it will be within

2  the statutory maximum.

### NO ADDITIONAL AGREEMENTS

4       39.  Defendant understands that, except as set forth herein,

5  there are no promises, understandings, or agreements between the USAO

6  and defendant or defendant's attorney, and that no additional

7  promise, understanding, or agreement may be entered into unless in a

8  writing signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

10      40.  The parties agree that this agreement will be considered

11 part of the record of defendant's guilty plea hearing as if the

12 entire agreement had been read into the record of the proceeding.

13 AGREED AND ACCEPTED

14 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
15 CALIFORNIA

16 NICOLA T. HANNA
   United States Attorney

17

18 _____          _____
   CHRISTOPHER S. STRAUSS                    Date
19 ELLEN M. QUATTRUCCI
   Trial Attorneys
20 U.S. Department of Justice,
   Tax Division
21

22

23 _____          11-1-2018
   TEYMOUR KHOUBIAN                          Date
24 Defendant

25                                          Nov. 1, 2018
   _____          _____
26 John Hanusz, Esq.                         Date
   Attorney for Defendant TEYMOUR
27 KHOUBIAN

28

1 | the sentence defendant will receive, except that it will be within

2 | the statutory maximum.

3 | NO ADDITIONAL AGREEMENTS

4 |     39.  Defendant understands that, except as set forth herein,

5 | there are no promises, understandings, or agreements between the USAO

6 | and defendant or defendant's attorney, and that no additional

7 | promise, understanding, or agreement may be entered into unless in a

8 | writing signed by all parties or on the record in court.

9 | PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

10 |     40.  The parties agree that this agreement will be considered

11 | part of the record of defendant's guilty plea hearing as if the

12 | entire agreement had been read into the record of the proceeding.

13 | AGREED AND ACCEPTED

14 | UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
15 | CALIFORNIA

16 | NICOLA T. HANNA
United States Attorney

17 |

18 | _____    November 2, 2018
CHRISTOPHER S. STRAUSS        Date
19 | ELLEN M. QUATTRUCCI
Trial Attorneys
20 | U.S. Department of Justice,
Tax Division

21 |

22 |

23 |

    _____    _____
24 | TEYMOUR KHOUBIAN        Date
Defendant

25 |

    _____    _____
26 | John Hanusz, Esq.        Date
Attorney for Defendant TEYMOUR
27 | KHOUBIAN

28 |

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          11-1-2018
TEYMOUR KHOUBIAN                          Date
Defendant

20

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am TEYMOUR KHOUBIAN's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.


_____          Nov. 1, 2018
John Hanusz, Esq.                          _____
Attorney for Defendant                     Date
TEYMOUR KHOUBIAN

1               ATTACHMENT A

2             STATEMENT OF FACTS

3       1.    TEYMOUR KHOUBIAN ("KHOUBIAN") was born in Iran and came to

4  the United States in 1992.  In 1994, KHOUBIAN became a permanent

5  resident of the United States, and in September of 2008, KHOUBIAN

6  became a naturalized citizen of the United States.

7       2.    After KHOUBIAN's father passed away in 2003, KHOUBIAN

8  became a signatory and joint beneficial owner of three accounts at

9  Bank Leumi le-Israel, B.M. ("Bank Leumi") in Tel Aviv, Israel.  The

10 Bank Leumi accounts XXXX72, XXXX12, and XXXX65 were owned by KHOUBIAN

11 jointly with his mother, T.K.K. KHOUBIAN was the beneficial owner and

12 had signature authority over these three accounts from at least 2005.

13 KHOUBIAN held a fourth account, XXXX80, at Bank Leumi jointly with

14 his wife, D.K.  He was the beneficial owner and had signature

15 authority over this account from at least 2005 through 2012 (all four

16 accounts are collectively referred to as "the Bank Leumi accounts").

17 During 2005 through 2012, the Bank Leumi accounts held at least $15

18 million on deposit and reached a high balance of over $20 million in

19 2008.

20      3.    During 2005 through 2012, inclusive, the Bank Leumi

21 accounts produced interest income that KHOUBIAN knew should have been

22 reported on his and T.K.K's U.S. individual income tax returns.

23      4.    From at least 2005 until at least 2015, KHOUBIAN was also

24 the beneficial owner of an account at Commerzbank AG in Germany that

25 maintained a balance of over $200,000.

26      5.    KHOUBIAN self-prepared his own U.S. individual income tax

27 returns for tax years 2005 through 2011 and signed all of those

28 returns electronically under penalty of perjury by using a self-

1  selected Personal Identification Number.  KHOUBIAN filed his self-
2  prepared U.S. individual income tax returns electronically with
3  Internal Revenue Service (hereinafter "IRS").  KHOUBIAN failed to
4  file a 2012 U.S. Individual Income Tax Return, Form 1040.
5      6.    KHOUBIAN's U.S. individual income tax returns for tax
6  years 2005 through 2010, inclusive, were false in two ways: (i) none
7  of the interest income produced by his foreign accounts was reported
8  on his tax returns; and (ii) KHOUBIAN failed to report his ownership
9  interest and signature authority over the foreign accounts that were
10 located in Israel and Germany.
11     7.    In total, the four Bank Leumi accounts jointly held by
12 KHOUBIAN generated interest income of in excess of $4.0 million
13 between 2005 and 2010 that was not reported on KHOUBIAN's U.S.
14 individual income tax returns, T.K.K.'s U.S. individual income tax
15 returns, or any other income tax return for any related entity.  The
16 tax loss associated with KHOUBIAN's failure to disclose these
17 accounts is approximately $1.2 million.
18     8.    KHOUBIAN was responsible for coordinating the preparation
19 and filing of T.K.K.'s U.S. individual income tax returns, which were
20 prepared by a third-party tax return preparer.  KHOUBIAN willfully
21 caused the preparation and filing of false U.S. individual income tax
22 returns for T.K.K. for tax years 2005 through 2010 that (i) omitted
23 any interest income earned from the Bank Leumi accounts; and (ii)
24 failed to disclose the existence of, and T.K.K.'s beneficial
25 ownership or signature authority over, a financial account in Israel.
26     9.    With respect to his 2011 individual income tax return,
27 which was filed on or about October 16, 2012, KHOUBIAN failed to
28 report all of the interest that he earned from his Bank Leumi

2

1    accounts and failed, on Schedule B, Part III, line 7b, to enter the
2    name of the foreign country Germany, to disclose that he was the
3    beneficial owner of an account at Commerzbank in Germany.

4        10.   As of at least 2009, KHOUBIAN was aware that the IRS had a
5    program called the Offshore Voluntary Disclosure Program (hereinafter
6    the "OVDP").   The OVDP allowed U.S. taxpayers to voluntarily disclose
7    their previously undisclosed foreign accounts and pay a reduced
8    penalty (originally the penalty was 20%, which later increased to 25%
9    in 2011, 27.5% in 2012, and then 50% in 2014) regarding the high
10   aggregate balance for a certain time frame to resolve their civil
11   liability for not declaring or reporting the account to U.S.
12   authorities. As part of the OVDP, the IRS also advised U.S. taxpayers
13   with undisclosed foreign financial accounts that a voluntary
14   disclosure would result in the IRS declining to refer those U.S.
15   taxpayers to the Department of Justice for criminal prosecution.

16       11.   Beginning in 2009 and continuing until 2012, KHOUBIAN had
17   multiple discussions with bankers at Bank Leumi seeking, and in some
18   cases receiving, assurances that Bank Leumi would not disclose the
19   existence of his accounts to the IRS.

20       12.   During 2011 and 2012, Bank Leumi requested that KHOUBIAN
21   sign a Form W-9 for the purpose of U.S. tax reporting.   KHOUBIAN
22   declined to sign the Form W-9 on multiple occasions, and as late as
23   2012, KHOUBIAN attempted to persuade bankers at Bank Leumi to assist
24   him in further concealing his accounts from the IRS by:   i) putting
25   the accounts in a relative's name; (ii) using his Iranian passport to
26   document him as a non-U.S. person; and (iii) transferring his funds
27   to his account in Germany at Commerzbank (where he was identified as
28   an Iranian citizen).

1    13.  In an August 13, 2012 recorded telephone conversation with
2    a banker at Bank Leumi, KHOUBIAN stated that the reason he did not
3    want to sign a Form W-9, was "because you have to pay half of it."
4    14.  With respect to KHOUBIAN's U.S. individual income tax
5    return, Form 1040, for tax year 2009 self-prepared by KHOUBIAN and
6    filed with the IRS, the tax return was materially false in that it
7    (i) omitted at least $340,482 of interest earned from the Bank Leumi
8    accounts that KHOUBIAN knew should have been reported; and (ii)
9    failed to disclose KHOUBIAN's ownership interest in and signature
10   authority over the Bank Leumi accounts and the Commerzbank account.
11   15.  KHOUBIAN acted willfully in preparing and filing this
12   false tax return in that he knew he had a duty under U.S. law to
13   report the existence of his foreign accounts and the interest income
14   earned from those accounts on his 2009 U.S. individual income tax
15   return.
16   16.  With respect to KHOUBIAN's U.S. individual income tax
17   return, Form 1040, for tax year 2010 self-prepared by KHOUBIAN and
18   filed with the IRS, the tax return was materially false in that it
19   (i) omitted at least $291,400 of interest earned from the Bank Leumi
20   accounts that KHOUBIAN knew should have been reported; and (ii)
21   failed to disclose KHOUBIAN's ownership interest in and signature
22   authority over the Bank Leumi accounts and the Commerzbank account.
23   17.  KHOUBIAN acted willfully in preparing and filing this false
24   tax return in that he knew he had a duty under U.S. law to report the
25   existence of his foreign accounts and the interest income earned from
26   those accounts on his 2010 U.S. individual income tax return.
27
28

4

18.   From at least 2009 until June 2013, KHOUBIAN willfully failed to file FBARs disclosing the existence of his Bank Leumi accounts and his Commerzbank account in Germany.

19.   For calendar years 2012 and 2013, KHOUBIAN filed an FBAR that disclosed his Bank Leumi accounts but failed to disclose the existence of his Commerzbank account in Germany.

20.   In efforts to conceal his foreign accounts from the IRS, on September 12, 2012, when KHOUBIAN was questioned by Special Agents from IRS's Criminal Investigation Division about his accounts at Bank Leumi, KHOUBIAN falsely stated that the Bank Leumi accounts were not in his name and that he was not aware of the rules requiring U.S. persons to report their foreign accounts.

21.   On October 7, 2014, during an interview with Special Agents from IRS's Criminal Investigation Division, KHOUBIAN falsely stated that: (i) he did not own a bank account in Germany during 2005 through 2010; (ii) he closed his German account many years ago and moved all of the money to the United States; and (iii) none of the money in his bank account in Germany was moved to Israel.  At the time KHOUBIAN made these statements, he knew that (i) he owned a bank account at Commerzbank between 2005 and 2010; (ii) he had not closed his Commerzbank account in Germany and transferred all of the money

///

///

///

5

1  in that account to the United States; and (iii) he had transferred in

2  excess of $600,000 from his Commerzbank account in Germany to a Bank

3  Leumi account in Israel.

4

5                 ******************************

6      I have read this Attachment A to the Plea Agreement and

7  carefully discussed every part of this Attachment to the Plea

8  Agreement with my attorney.  I agree and stipulate to the facts as

9  stated above.

10

11

12  _____           10-31-2018
                                              _____
13  TEYMOUR KHOUBIAN                          Date
    Defendant
14

15

16      I am TEYMOUR KHOUBIAN's attorney.  I have read Attachment A to

17  the Plea Agreement and carefully discussed every part of this

18  Attachment to the Plea Agreement with my client.  To my knowledge, my

19  client's decision to agree to the facts as stated above is an

20  informed and voluntary one.

21

22  _____           Oct. 31, 2018
                                              _____
23  John Hanusz, Esq.                         Date
    Attorney for Defendant
24  TEYMOUR KHOUBIAN

25

26

27

28

                          6